S00A1103. HIGDON v. CITY OF SENOIA et al.
S00A1104. COWETA COUNTY v. CITY OF SENOIA.
(538 SE2d 39)

Thompson, Justice.

In these companion cases we are called upon to resolve whether OCGA §§ 36-70-24 (4) (C) and 36-36-11 violate the delegation of zoning power under Art. IX, Sec. II, Par. IV of the Georgia Constitution. For the reasons which follow, we declare the statutes constitutional, and reverse the judgment of the trial court.

In its 1997 session, the General Assembly enacted the Service Delivery Act, OCGA § 36-70-20 et seq., to "minimize inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use." Id. Toward that end, OCGA § 36-70-24 (4) (C) provides for a dispute resolution process when a bona fide land use dispute arises between the city and county over the use of land which is the subject of annexation. It requires that "[a] process shall be established by July 1, 1998, to resolve land use classification disputes when a county objects to the proposed land use of an area to be annexed into a municipality within the county." Id. OCGA § 36-36-11 (a) defines a "bona fide land use classification objection" as an objection to a proposed change in land use which "results in a substantial change in the intensity of the allowable use of the property or a change to a significantly different allowable use." OCGA § 36-36-11 (b) provides that an annexation is not effective until any bona fide land use classification objections raised by the county relative to the area to be annexed are resolved pursuant to the dispute resolution process required by OCGA § 36-70-24 (4) (C).

To comply with the mandate of OCGA § 36-70-24 (4) (C), Coweta County and all municipalities incorporated within the county, including the City of Senoia, approved and adopted a written memorandum of agreement ("agreement") establishing a process to resolve land use classification disputes regarding property to be annexed.

The present litigation arose when the owners of 55.29 acres of

land located in unincorporated Coweta County applied to the City of Senoia for annexation of their property. The owners sought to develop a residential subdivision and requested R-1 single family residential zoning, which allows minimum lots of one acre. The property is in Coweta County's Rural Reserve Zoning District, which requires a minimum lot size of five acres. Coweta County notified the City of Senoia of its intent to object to the proposed land use on the basis that the requested zoning allows higher density and would result in a substantial increase in intensity of the use of the property.

Coweta County initiated the first phase of the dispute resolution agreement by notifying the City of Senoia of its objections to land use conflicts created by the proposed annexation. The next step of the agreement required the parties to devise mitigative measures to address the conflicts created by the proposed annexation. The parties were successful in mitigating their dispute as to the substantive question of land use.[1] However, a problem arose when the City of Senoia added the condition that Senoia would be responsible for monitoring implementation of the agreed upon restrictions. When it became apparent that Senoia and Coweta County could not agree on which entity would monitor implementation, the dispute was referred to a board of annexation appeals – the next stage of the resolution process as set forth in the agreement. The board recommended approval of the annexation with the previously agreed upon restrictions on land use and required that the county monitor compliance. The City of Senoia rejected the board's recommendation.

The next phase of the resolution process called for the parties mutually to select a mediator and undertake a mediation process. When, despite suggestions from both parties, they were unable to agree upon a mediator, the City of Senoia filed this action for declaratory judgment in which it challenged the constitutionality of OCGA §§ 36-70-24 (4) (C) and 36-36-11. Jim Higdon, in his official capacity as the Commissioner of the Georgia Department of Community Affairs, was granted leave to intervene as a defendant. The trial judge declared OCGA §§ 36-36-11 and 36-70-24 (4) (C) unconstitutional in violation of Art. IX, Sec. II, Par. IV of the Georgia Constitution (governing authority of each county and municipality may exercise the power of zoning). Commissioner Jim Higdon appeals in Case No. S00A1103; Coweta County appeals in Case No. S00A1104.

---

[1] It was mutually agreed that the City of Senoia would restrict the use of the property to single family residential homes and that all lots bordering the county would contain a minimum of 1.6 acres.

## Case No. S00A1103

1. It is asserted that the trial court erred in refusing to dismiss Senoia's complaint on the ground that it did not properly assert a claim for declaratory judgment. We disagree.

The purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; [it] is to be liberally construed and administered." OCGA § 9-4-1. An action for declaratory judgment is "an available remedy to test the constitutionality of a statute in a case where an actual controversy exists with respect thereto." *Harper v. Burgess*, 225 Ga. 420, 422 (3) (169 SE2d 297) (1969). The Act has been broadened to provide relief in cases where a justiciable controversy exists. OCGA § 9-4-2 (b); *Baker v. City of Marietta*, 271 Ga. 210 (518 SE2d 879) (1999). There is a justiciable controversy "[w]here a concrete issue is present, and there is a definite assertion of legal rights, and a positive legal duty with respect thereto, which are denied by the adverse party." *City of Nashville v. Snow*, 204 Ga. 371, 377-378 (1) (a) (49 SE2d 808) (1948).

Although some aspects of the land use dispute have been settled, the trial court correctly determined that a justiciable controversy exists because the City of Senoia is prevented from annexing property under a statute which it alleges to be unconstitutional. Therefore, declaratory judgment is a proper vehicle to determine the rights of the parties. It follows that the trial court correctly refused to dismiss Senoia's complaint. Compare *Baker v. City of Marietta*, supra (there was no justiciable controversy and the trial court was without jurisdiction to consider the petition for declaratory judgment because the county failed to make the required objection to the proposed annexation and land use).

## Case No. S00A1104

2. The constitutional challenge was properly raised and ruled on below as to invoke the constitutional jurisdiction of this Court. See generally *Blackston v. Dept. of Natural Resources*, 255 Ga. 15 (1) (334 SE2d 679) (1985).

3. In deciding whether OCGA §§ 36-36-11 and 36-70-24 (4) (C) violate Art. IX, Sec. II, Par. IV of the Georgia Constitution,[2] we must determine whether these enactments actually interfere with the con-

---

[2] Art. IX, Sec. II, Par. IV provides: "The governing authority of each county and of each municipality may adopt plans and may exercise the power of zoning. This authorization shall not prohibit the General Assembly from enacting general laws establishing procedures for the exercise of such power."

stitutional delegation of zoning power, or whether they merely set forth a threshold procedure to be followed before a municipality may exercise the privilege of annexation granted by the legislature.

The General Assembly has the power to change municipal boundaries by annexation, *Lee v. City of Jesup*, 222 Ga. 530 (1) (150 SE2d 836) (1966), and may delegate the power of annexation to municipal governments. *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1 (1) (178 SE2d 868) (1970). The delegation of that power is limited only by the federal and state constitutions. *City of Ft. Oglethorpe v. Boger*, 267 Ga. 485 (480 SE2d 186) (1997). Thus, "municipalities can receive and retain only such legislative power of the General Assembly as that body determines from time to time they should exercise." *Plantation Pipe Line Co.*, supra at 7. We have also determined that the General Assembly has intended a liberal policy in the area of annexation by municipalities, seeking to leave such matters primarily under local control. *City of Gainesville v. Hall County Bd. of Ed.*, 233 Ga. 77 (2) (209 SE2d 637) (1974).

In the exercise of that authority, OCGA § 36-36-1 et seq. expressly sets out certain conditions which must be met by municipalities in connection with the delegation of the legislative power of annexation. One such condition to a proposed annexation by a municipal government requires that any bona fide land use classification objections between local governments be resolved prior to allowing an annexation to become effective. OCGA § 36-36-11. OCGA § 36-70-24 (4) (C) furthers that objective by requiring the establishment of a "process" by each county and municipality to resolve bona fide land use disputes concerning an area to be annexed into a municipality.

In reviewing whether the two statutes under consideration violate the constitutional delegation of zoning power, we must give full effect to the legislative intent and purpose in the passage of the law unless that purpose conflicts with the constitutional delegation of authority. See generally *Dallas Blue Haven Pools v. Taslimi*, 180 Ga. App. 734 (2) (350 SE2d 265) (1986). All statutes are presumed to be enacted with full knowledge of existing law and their meaning and effect is to be determined with reference to the constitution as well as other statutes and decisions of the courts. *Plantation Pipe Line*, supra.

In this case, we are guided by the legislative statements of intent. In OCGA § 36-36-10, the General Assembly explained the governmental interest furthered by OCGA § 36-36-11:

It is the express intent of the General Assembly in enacting the provisions of this chapter to provide for alternative methods for annexing or deannexing an area or areas into or from the corporate limits of a municipality. Except as other-

wise expressly provided in this chapter, no provision of this chapter relating to annexation or deannexation by any such alternate method is intended to or shall be construed to in any way restrict, limit, or otherwise impair the authority of the General Assembly to annex or deannex by local Act.

Likewise, the legislature has evinced its purpose in enacting the Service Delivery Act. OCGA § 36-70-20 provides:

[T]his article is intended to minimize inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use. The local government service delivery process should result in the minimization of noncompatible municipal and county land use plans and in a simple, concise agreement describing which local governments will provide which service in specified areas within a county and how provision of such services will be funded.

Although we exercise caution when inquiring into statements of legislative intent, the rejection of such statements is justified only upon the "clearest proof." See *Café Erotica v. Peach County*, 272 Ga. 47, 48 (1) (526 SE2d 56) (2000). We decline to reject the legislative objectives in this case. It is clear that the statutes under consideration concern annexation procedures over which the General Assembly retains power. *Plantation Pipe Line*, supra. The prescriptions set out in OCGA §§ 36-36-11 and 36-70-24 (4) (C) create a process for attempting to resolve disputes concerning annexation. They take into consideration the need for the orderly growth of the city and impact upon the land to be annexed as well as on the county. "Whether to add additional land area calls for an evaluation of the benefits and burdens of such enlargement and the resulting impact upon the financial, political and environmental structure of the city and the area to be annexed." *Plantation Pipe Line*, supra. The dispute resolution process furthers those objectives. Because substantive zoning matters are not implicated, the statutes in issue do not conflict with the city's power to zone land within its boundaries.

Finally, we reject Senoia's argument that the provisions in question give Coweta County ultimate control over Senoia's ability to rezone property. While Art. IX, Sec. II, Par. IV of the Georgia Constitution does give municipalities the power to adopt plans and exercise zoning within its city limits, it does not permit a municipality to dictate how a parcel of property may be zoned outside of its boundaries. "The governing authority of each county and of each municipality may adopt plans and may exercise the power of zoning." Id. See also

*O S Advertising Co. of Ga. v. Rubin*, 263 Ga. 761 (438 SE2d 907) (1994) (municipality has power to zone and restrict use of land within its boundaries), overruled on other grounds, *Ashkouti v. City of Suwanee*, 271 Ga. 154 (516 SE2d 785) (1999). Therefore, OCGA § 36-36-11 does not unconstitutionally infringe on a municipality's zoning rights.

*Judgment affirmed in Case No. S00A1103. Judgment reversed in Case No. S00A1104. All the Justices concur.*

CARLEY, Justice, concurring.

I can concur in the majority's opinion in captioned cases because the Court's only constitutional holding is that OCGA §§ 36-70-24 (4) (C) and 36-36-11 do not violate Article IX, Section II, Paragraph IV of the 1983 Georgia Constitution. Although amicus curiae present a viable argument that those statutes violate Article VI, Section I, Paragraph I of the Constitution because they unlawfully delegate the exclusive judicial power of the courts to a dispute resolution process, that constitutional issue was not ruled on by the trial court and is not properly before this Court.

I am authorized to state that Justice Hines joins in this opinion.

DECIDED OCTOBER 30, 2000.

Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Grace E. Lewis, Senior Assistant Attorneys General, for Higdon.

Hawkins & Parnell, H. Lane Young II, Kimberly A. Houston, Debra E. LeVorse, Glover & Davis, A. Mitchell Powell, Jr., Jerry A. Conner, Thurbert E. Baker, Attorney General, John B. Ballard, Jr., Deputy Attorney General, for Coweta County.

Jenkins & Nelson, Frank E. Jenkins, Peter R. Olson, for City of Senoia.

Haynie, Litchfield & Crane, Douglas P. Haynie, Emilie K. Petrovich, James F. Grubiak, Kelly J. Pridgen, amici curiae.