A97A0583. ENRON CAPITAL & TRADE RESOURCES CORPORATION v. POKALSKY et al.
(490 SE2d 136)

JOHNSON, Judge.

Enron Capital & Trade Resources Corporation is in the business

of buying, selling, and supplying energy sources. Enron also trades energy commodities. Southern Electric International, Inc. is in the business of providing engineering and consulting services to power and other electric utility companies.

While employed by Enron in Texas, Joseph Pokalsky helped Enron develop procedures for trading energy commodities. Pokalsky eventually resigned his position at Enron and accepted employment with Southern in Georgia. On the day he resigned from Enron, he and Southern filed an action in Georgia seeking a declaratory judgment that the restrictive covenants contained in the employment agreements between Pokalsky and Enron were unenforceable. The agreements provided, in part, that the employee will not, at any time after employment, make any unauthorized disclosure of any confidential business information or trade secrets of Enron or its affiliates or make any use thereof; the employee will not, for one year after the termination of employment, engage in any business competitive with the business conducted by the employer, render any advice or services to, or otherwise assist any other person, association, or entity who is engaged in any business competitive with the business conducted by the employer, in any geographic area or market where Enron conducts any business, which may limit the employee's ability to engage in certain businesses "anywhere in the world." As part of the action, Pokalsky and Southern sought a temporary restraining order to enjoin Enron from seeking to enforce the restrictive covenants, from taking any other actions to preclude Pokalsky and Southern from engaging in an employment relationship, and from benefiting in any other fashion from the enforcement of the restrictive covenants. The court issued a temporary restraining order against Enron, prohibiting Enron from seeking to enforce the non-competition obligations, acting to preclude Pokalsky and Southern from engaging in an employment relationship, and benefiting from the enforcement of those provisions.

Soon thereafter, Pokalsky and Southern moved for an interlocutory injunction to enjoin Enron from engaging in the same conduct until a final judgment was entered. At about the same time, Enron filed a lawsuit in Texas against Pokalsky and Southern seeking to enforce certain obligations contained in the same agreements.

A few days later, Pokalsky and Southern amended their motion for interlocutory injunction seeking to enjoin Enron from seeking to enforce the non-disclosure or fiduciary obligations contained in the agreements, taking any action to preclude Pokalsky and Southern from engaging in employment relationships, benefiting from the enforcement of the non-disclosure provisions, and seeking to preclude Pokalsky from using information contained in his mind. Pokalsky and Southern also filed a motion for contempt against Enron for fil-

ing the Texas action in violation of the temporary restraining order. In addition, Pokalsky and Southern filed a motion to temporarily restrain Enron from seeking to enforce the non-disclosure covenants. Finally, Pokalsky and Southern amended their motion for interlocutory injunction to enjoin Enron from pursuing, prosecuting, seeking discovery, or otherwise pursuing the Texas action.

In a detailed order, the court granted the motion for interlocutory injunction as amended, denied the motion for contempt, and ordered Enron to dismiss and cease pursuing the Texas action. Enron appeals.

1. Enron contends the trial court erred in entertaining the action because it does not present a justiciable case or controversy. Specifically, Enron argues that a justiciable case or controversy is presented for a declaratory judgment when a plaintiff needs judicial direction in order to decide what action to take in the future, not when he seeks confirmation of the propriety of action he has already taken. See *Chattahoochee Bancorp v. Roberts*, 203 Ga. App. 405, 406 (416 SE2d 875) (1992). Additionally, Enron maintains, there must be two interested parties asserting adverse claims. See *Action for a Clean Environment v. State of Ga.*, 217 Ga. App. 384 (457 SE2d 273) (1995). Enron claims there were not, since Pokalsky had already taken the job and Pokalsky and Southern could only speculate as to what Enron's position might be.

(a) Declaratory relief is available where a legal judgment is sought that would control or direct future action. *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17 (413 SE2d 450) (1992). The declaratory judgment statute is construed liberally. Id. At the time the lawsuit in this case was filed, Pokalsky and Southern were uncertain whether their employment could legally continue into the future. This is not an improper use of the declaratory relief procedure. See generally *Jackson & Coker, Inc. v. Hart*, 261 Ga. 371, 372 (1), 373 (2) (405 SE2d 253) (1991); *Beckman v. Cox Broadcasting Corp.*, 250 Ga. 127, 128 (296 SE2d 566) (1982).

(b) Moreover, while OCGA § 9-4-2 (a) is limited to "actual controversies," OCGA § 9-4-2 (b) additionally authorizes superior courts to entertain declaratory actions where it appears that the ends of justice require that such a declaration be made. Courts merely require the presence in the declaratory action of a party with an interest in the controversy adverse to that of the petitioner, which Enron has had. See *Famble v. State Farm Ins. Co.*, 204 Ga. App. 332, 333-334 (2) (419 SE2d 143) (1992).

2. Enron argues that the trial court erred in enjoining it from proceeding with its Texas action or initiating any other action anywhere else against Pokalsky because the two cases involve different provisions of the agreements and the "anywhere else" restriction

amounted to an abuse of discretion. We disagree.

Both actions involve the same parties, facts and agreements. Although the non-disclosure and fiduciary duty issues were not part of the motion for interlocutory injunction as originally filed, those issues were added when the motion was amended. The trial court properly ordered the Texas action to be dismissed. See *Tennessee Farmers &c. Ins. Co. v. Wheeler*, 170 Ga. App. 380 (2), 381 (317 SE2d 269) (1984). In addition, the Texas action was properly ordered dismissed as its filing violated the court's temporary restraining order.

The court's order prohibiting Enron from filing an action "anywhere else" did not preclude Enron from bringing its claims as counterclaims in the Georgia action. Indeed, such claims would be compulsory counterclaims. See generally OCGA § 9-11-13; *Oh v. Bell*, 221 Ga. App. 276, 278 (470 SE2d 807) (1996).

3. The trial court did not err in finding that Georgia law, rather than Texas law, controls the enforceability of the covenants not to compete and not to disclose in the agreement. Contrary to Enron's argument, the choice of Texas law provision contained in the agreements is not controlling. Although the parties may have chosen the law of a foreign jurisdiction to govern, a Georgia court will not enforce the contract if it is "particularly distasteful." See generally *Commercial Credit Plan v. Parker*, 152 Ga. App. 409, 414 (1) (263 SE2d 220) (1979). The non-competition provisions in this case were "particularly distasteful" because they prohibited a former employee from competing anywhere in the world in any capacity. Such covenants have been held to be unenforceable in Georgia. See *Nat. Settlement Assoc. &c. v. Creel*, 256 Ga. 329, 332 (3) (c) (349 SE2d 177) (1986). Moreover, the non-competition restriction is unenforceable as geographically overbroad, since it prohibits Pokalsky from working in an area where Enron has done business in the past 12 months or anywhere it currently conducts business; "area" is not defined. See generally *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68 (1) (274 SE2d 329) (1981). Moreover, the non-disclosure covenant is unenforceable in Georgia because it contains no time limitation. See *Stahl Headers v. MacDonald*, 214 Ga. App. 323, 324 (447 SE2d 320) (1994). "The law of the jurisdiction chosen by parties . . . will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. Covenants against disclosure, like covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state." (Citations omitted.) *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (2) (238 SE2d 368) (1977). We find no error.

4. The trial court did not enter final findings of law of fact or

issue a permanent injunction, after only a motion and hearing for an interlocutory injunction. Instead, the order specifically states that the court is granting an interlocutory judgment. This enumeration is therefore without merit.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JULY 14, 1997 —
RECONSIDERATION DENIED JULY 29, 1997 —

*Alston & Bird, G. Conley Ingram, James C. Grant, Alston D. Correll III, Powell, Goldstein, Frazer & Murphy, Elmer A. Simpson, Jr., V. Robert Denham, Jr.*, for appellant.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Dirk G. Christensen, Troutman Sanders, Stephen W. Riddell, Robert F. Webb, Harold G. Clarke*, for appellees.